**Louise NEPA, Administratrix of the Estate of Leonard P. Nepa, Plaintiff below, Appellant and Cross-Appellee,**

v.

**Albert H. MARTA and Anne M. Marta, his wife, a partnership (6 Del.C. § 1528) t/a Chestnut Hill Plaza, Defendant below, Appellee and Cross-Appellant.**

Supreme Court of Delaware.

Submitted June 13, 1975.

Decided Sept. 30, 1975.

Rehearing Denied Nov. 14, 1975.

C. Waggaman Berl, Jr., Wilmington, for plaintiff below, appellant and cross-appellee.

Daniel L. Twer, Wilmington, for defendant below, appellee and cross-appellant.

Before HERRMANN, Chief Justice, DUFFY and McNEILLY, Justices.

HERRMANN, Chief Justice:

Plaintiff appeals from a Superior Court judgment denying a real estate broker's commission allegedly owed to the estate of her deceased husband (hereinafter Nepa). Defendant cross-appeals from the denial of pretrial motions to dismiss plaintiff's cause of action based upon Delaware's Statute of Limitations (10 Del.C. § 8106) and Statute of Frauds (6 Del.C. § 2714(a)).

I.

In 1969, defendant was seeking a major store occupant for a shopping center he was developing. Nepa, a real estate broker and personal friend, was informed thereof by defendant. Nepa contacted Gaylord's Discount Department Store, and succeeded in bringing Gaylord's and defendant together for negotiations. On April 10, 1970, shortly before his death, Nepa wrote to defendant that Gaylord's had agreed to defendant's terms. Nevertheless, negotiations broke off because defendant had commenced exploratory talks with another prospect. When these discussions subsequently failed in October, 1970, defendant and Gaylord's resumed negotiations and a lease was signed on December 2, 1970.

Plaintiff contends that either upon an express contract theory, or "upon the principles of restitution and implied contracts in general and the principle of unjust enrichment in particular", the decedent was entitled to a brokerage commission for his services. Defendant alleges that plaintiff's claim is barred by Delaware's three year Statute of Limitations (10 Del.C. § 8106). He maintains that if Nepa in fact earned a commission, his cause of action accrued on April 10, 1970, the date he wrote defendant that Gaylord's had agreed to meet defendant's price, and therefore, that plaintiff's complaint, filed on May 23, 1973, came too late. The defendant further contends that the cause of action is barred by the Statute of Frauds.

The Trial Court held that plaintiff's action accrued "no earlier than December 2, 1970, when defendant entered into a lease with Gaylord. Since the complaint was filed within three years of that date, the action is not barred by the statute of limitations." Also finding no merit in the Statute of Frauds argument, the Court proceeded to the merits. It determined that "[w]ithout proof of a later agreement [to fix a compensation term], the Court

cannot imply a contract to pay the customary commission", and that restitution was equally unavailing as a basis for relief, as plaintiff "performed his services in the expectation that defendant would later agree to compensate him. This is not the same as acting on the mistaken belief that defendant was already bound to do so."

## II.

Critical to a ruling on the contentions of the parties is a determination of whether Nepa was the "procuring cause" of Gaylord's lease with defendant; or, if not the "procuring cause", whether other circumstances existed that entitled him to a commission nevertheless.

■■■ The general rule is "that a broker may recover a commission only when he is the procuring cause of a consummated transaction." *B–H, Inc. v. "Industrial America", Incorporated,* Del.Supr., 253 A. 2d 209, 213 (1969). *Accord, Canaday v. Brainard,* Del.Supr., 1 Storey 226, 144 A.2d 240 (1958); *Great Lakes Steel Corporation v. Baysoy,* Del.Supr., 2 Storey 340, 157 A.2d 902 (1960). Under this rule, plaintiff earns a commission "if, and only if, a consummated transaction resulted from his efforts * * *." *"Industrial America",* 253 A.2d at 213. In the absence of an agreed amount, such commission is to be determined by the trier-of-fact on a *quantum meruit* basis.* *See Henderson & Beal, Inc. v. Glen,* Mass.Supr., 329 Mass. 748, 110 N.E.2d 373 (1953); *Bangle v. Holland Realty Investment Co.,* Nev.Supr., 80 Nev. 331, 393 P.2d 138 (1964); *cf. Clinkinbeard v. Poole,* Ky.App., 266 S.W.2d 796 (1954);

*Consolidated Oil & Gas, Inc. v. Roberts,* Colo.Supr., 162 Colo. 149, 425 P.2d 282 (1967) *(en banc).*

■■■ However, there is an exception to the above-stated general rule: "[I]f a duly authorized broker produces a prospect ready, willing, and able to meet his principal's expressed terms, the commission has been earned whether or not the transaction is thereafter consummated; * * *." *"Industrial America",* 253 A.2d at 213. The Superior Court failed to determine whether Gaylord's had agreed to defendant's express terms, as stated in Nepa's April 10, 1970 letter, thus satisfying the "ready, willing, and able" exception. If such was the case, plaintiff's cause of action accrued on that date, and the complaint filed in May, 1973, was untimely.

But, if on the facts, this case falls under the general rule, a determination of whether Nepa was the "procuring cause" of the December 2, 1970 lease must be made. Such finding was not made by the Trial Court. Paraphrased in the language of *"Industrial America":*

"The issue is whether [Nepa's] efforts in producing [a tenant] was the first link in a direct chain of causation leading to the consummation of the transaction, without a substantial break in the negotiations. If so, the plaintiff was the procuring cause and entitled to a commission even though [defendant] forged the remaining links in the chain. If not, the plaintiff was not the procuring cause of the transaction and was not entitled to a commission." 253 A.2d at 214.

---

* Any of the following *dicta* in *Slaughter v. Stafford,* Del.Supr., 1 Storey 168, 141 A.2d 141, 144 (1958), which may appear to conflict with this basis of compensation, is renounced:

"These conclusions of the trial judge appear to us to be based on [a proposition] of law that may be stated as follows:

    *     *     *     *     *

"That even if he is discharged in good faith, the first broker is entitled to be com-

pensated on a quantum meruit basis for his labors in showing the property to the prospective purchaser and obtaining an offer from him.

"[This proposition does not seem] to us to be sound. We find little dissent from the proposition that a principal may, for any reason he likes, discharge a broker whose contract of employment contains no definite time, at any time before the broker has met the principal's terms."

If the plaintiff's claim is found to come under the general "procuring cause" rule, the cause of action did not arise until the date of the lease, December 2, 1970, and this suit, filed in May, 1973, was within the limitation period.

■ Accordingly, we conclude that the Superior Court's decision denying plaintiff's claim must be reversed and remanded for findings as to whether plaintiff's complaint falls within the general rule or its exception as stated in *"Industrial America"*. If the general rule applies, a further finding must be made on the issue of "procuring cause"; and should this issue also be resolved in Nepa's favor, for a determination of the commission owed. If, instead, the "ready, willing, and able" exception applies, plaintiff was owed a commission in April, 1970, and his subsequent claim, filed beyond the limitation period, must be dismissed.

### III.

■ Defendant's contentions concerning Delaware's Statute of Frauds [6 Del.C. § 2714(a)] are without merit. Although any agreement between plaintiff and defendant was oral, the Statute of Frauds is inapplicable here both because of the doctrine of part performance, *cf. Acierno v. McCall*, Del.Supr., 264 A.2d 513 (1970) ; *Durand v. Snedeker*, Del.Ch., 40 Del.Ch. 166, 177 A. 2d 649 (1962), and because the terms of any such agreement could be performed within a year. *Haveg Corporation v. Guyer*, Del.Supr., 211 A.2d 910 (1965).

### IV.

On the remand, the Trial Court will be confronted also with the defendant's contentions (1) that neither an authorization to, nor a brokerage agreement with, Nepa ever existed; and (2) that if such authorization or agreement existed, it was terminated in good faith prior to the April letter stating that Gaylord's had agreed to defendant's terms. Those contentions have not been decided either here or below; they remain for disposition on the remand.

\*    \*    \*    \*    \*    \*

Reversed and remanded.