MARY A. LEAHY, EXECUTRIX, *vs.* HORACE B. CHENEY ET AL., EXECUTORS.

First Judicial District, Hartford, May Term, 1916.
PRENTICE, C. J., THAYER, RORABACK, WHEELER and BEACH, Js.

General Statutes, § 1128, gives the personal representative of a decedent a year in which to begin an action which survives. *Held* that this provision was not intended to shorten the period allowed by the statutes of limitation applicable to particular cases, but on the contrary to extend that period in all cases in which less than one year remained to the decedent at his death. In other words, that the personal representative had all the time the decedent himself would have had if he had lived, and in any event a full year from the date of his death.

The fact that the duties and responsibilities of a domestic servant are increased by an enlargement of the household, does not change the contract relation theretofore existing between such servant and her employer, in the absence of any evidence tending to prove a special agreement to pay additional wages.

In the present case the plaintiff alleged that her testatrix, a domestic servant in the employ of P, had agreed to remain with her as long as P might live, in consideration of receiving stated monthly wages, and a further or extra recompense by will, which P had agreed to make. *Held* that inasmuch as the servant died before her mistress and was thus unable to fully perform her undertaking, the plaintiff could not recover upon the contract; and that since the evidence was not sufficient to warrant the jury in finding a contract to pay anything more than the monthly wages, which admittedly had been paid, there could be no recovery on a *quantum meruit*, and therefore the plaintiff was properly nonsuited.

Cases in which extra compensation is demanded by the servant after

the death of the employer, call for clear proof of the contract upon which such claim is based.

A witness was asked as to the value of the extra services for which a recovery was sought. *Held* that inasmuch as it did not clearly appear what these extra services were which the witness was asked to appraise, nor that she was qualified to express an estimate or opinion, the trial court committed no error in excluding the inquiry.

In order to properly present an alleged erroneous ruling upon evidence, there should be a finding stating the question, the objection, the exception, and the answer, if any; and the stenographer's transcript of the evidence, certified for a different purpose, although containing the questions and rulings, cannot supply the place of such a finding.

If the action taken by the trial court is correct, it is immaterial that it proceeded upon a different ground from that urged by the litigant.

Argued May 2d—decided June 27th, 1916.

ACTION to recover damages for an alleged breach of contract and for the reasonable worth or value of services rendered by the plaintiff's testatrix, brought to the Superior Court in Hartford County where the plaintiff was nonsuited in a trial to the jury before *Tuttle, J.,* and from the refusal to set aside such judgment she appealed. *No error.*

*Albert H. Barclay,* for the appellant (plaintiff).

*William F. Henney* and *John H. Buck,* for the appellees (defendants).

THAYER, J. The claim of the plaintiff, as stated in her complaint and claimed in the brief of her counsel to have been established by the evidence, is that Antoinette R. Phelps, the defendants' testatrix, in 1872 requested Hannah Pigott, the plaintiff's testatrix, who was then a servant in and member of Miss Phelps' family, to remain in such employment as long as Miss Phelps should survive, and promised as compensation to pay her monthly wages for her services, and in addition thereto to leave her by will, absolutely,

a sum of money that would be sufficient to repay her for her services and to provide her a comfortable home so long as the said Pigott might survive, and that the latter accepted the proposition and promised to remain with Miss Phelps and perform the services upon the terms proposed. The pleadings and evidence show that the plaintiff's testatrix continued to live with Miss Phelps until February, 1912, when she died, having performed all services required of her to the time of her death, for which she had been paid $12 per month for a portion of the time, $15 for another portion, and $20 per month for the remainder.

It appears from the plaintiff's evidence that this action was not brought within one year from the time of the decease of her testatrix, and it is claimed in support of the judgment that the action was barred by General Statutes, § 1128, which provides that where the time limited for the commencement of any personal action, which by law survives to the representatives of a deceased person, shall not have elapsed at the time of his decease, the term of one year from the time of such decease shall be allowed to his executor or administrator to institute a suit therefor; and that in such cases such term shall be excluded from the computation. The defendants' claim is that if there was a contract such as claimed by the plaintiff, it was broken or extinguished by the death and failure of her testatrix to perform her part of it, and that the plaintiff's cause of action arose at the time of her death.

Assuming this to be the case, the defendants' claim is untenable. Six years is the time limited by statute for the commencement of an action for breach of contract. Section 1128 was not intended to shorten the statutory time in the cases referred to, but to extend it in such cases, where otherwise it would expire in less than a year after the death, so that the decedent's

representatives may have a full year in which to take out administration, learn of the existence of the claim, and bring suit. The executor or administrator has all the time which the decedent, if living, would have within which to bring the action, but if less than a year remained to the decedent his representative has a full year. The action in this case was brought within three years after the death of the plaintiff's testatrix, and so was within the statutory period.

The contract alleged provided that Miss Phelps should pay the plaintiff's testatrix monthly wages for her services, and that she would leave her by will a sum of money sufficient to repay her for her services and to provide her, so long as she should survive, a comfortable home. The plaintiff assumes that the monthly payment of wages for services was only a partial payment for services, and that the repayment for services later spoken of was for additional services not covered by the monthly wage payments first mentioned. The alleged contract is stated to have been by parol, and it is unnecessary for us to attempt to interpret it, as we are satisfied that the evidence was insufficient to warrant the jury in finding that the contract alleged, or any other special contract for wages for services other than those which, admittedly, were paid for, was ever entered into by the parties. The complaint alleges that the plaintiff's testatrix, at the time the alleged contract is said to have been made, was a servant in the family of the defendants' testatrix and was treated by the latter as a member of the family. The evidence tended to show this, and that she was at that time receiving fixed monthly wages for her services. It being admitted that she was a servant upon agreed monthly wages, the presumption would be, in the absence of anything to the contrary, that this continued to be her relation to her employer to the end. The law will

imply no contract to pay wages in addition to the monthly wages, from the fact that the duties and responsibilities of the servant were increased, as the evidence shows may have been the case, by relatives of the employer afterward making their home with her. To recover for such additional services, if such there were, the plaintiff was bound to prove a special contract to pay for them. This the plaintiff recognized, and alleged a special contract to pay for such services by will. Admittedly her testatrix did not fully perform her contract owing to the fact that she died before her employer. But if she faithfully performed her part of such a contract until death prevented its full performance, her executrix, first proving the contract, may recover the value of the service so performed, not by an action upon the contract, but upon a *quantum meruit* for services performed. *Grant* v. *Grant*, 63 Conn. 530, 543, 29 Atl. 15; *Hull* vs. *Thoms*, 82 Conn. 647, 652, 74 Atl. 925; *Schempp* v. *Beardsley*, 83 Conn. 34, 38, 75 Atl. 141. The contract would establish the fact that the parties contemplated that the extra services were to be paid for. *Schempp* v. *Beardsley, supra.* The servant's death would excuse further performance, but would prevent an action upon the contract, and only the value of the services performed, not exceeding the sum, if any, agreed to be paid, could be recovered.

Cases of this character, where extra compensation over that already received is claimed against a deceased person's estate, call for clear proof of the contract upon which the claim is based. Judge Elkin, in a case similar to this, said: "Loose declarations made to outside parties, indefinite understandings, suggested gratuities, anticipated benefactions and testamentary intentions not carried out, about which there is some vague and unconvincing testimony, are not sufficient

to establish an express contract, either to pay for the extra services at the death of the testatrix, or to provide for such compensation by legacy." *Grossman* v. *Thunder*, 212 Pa. St. 274, 278, 61 Atl. 904. There was no direct evidence of any contract between the parties for extra compensation. Only two witnesses were called to testify to declarations of the defendant's testatrix touching her feelings toward the servant and her services. These indicated a high appreciation of her and her services, and an intention to provide for her by will and to provide liberally for her. There was nothing in her declarations or those of the servant herself, testified to by those witnesses, that directly or indirectly implied that the latter was to be paid more than she was being paid for her services. The evidence showed that the servant was treated as one of the family, eating at the table with her employer, and that the latter paid her expenses in her sickness and clothed her and treated her more like a sister than a servant, and that she had on several occasions said in the latter's presence that she was going to provide for her, or give her, or had given her, something in her will. These are not declarations that there was a contract for extra pay, or that the legacy or provision referred to was a payment for extra services. Such bequests to faithful servants are frequently found in wills, to be paid in case such servants are in the testator's employment at the time of his death. The fact that the defendants' testatrix, on some of the occasions when she stated that she was going to leave her servant a legacy, said that the latter was going to remain with her until the former's death, was no indication that the legacy was to be a payment for extra services. The plaintiff's complaint and evidence showed that Miss Phelps left by her will, made prior to the death of the servant, the life use of $15,000

to the latter. Upon this evidence the jury would not have been warranted in finding a contract to pay by will for any extra services by the plaintiff's testatrix.

Had the evidence been sufficient to warrant the finding of a contract, there was none to show precisely what the services were which had already been paid for, and what the extra services sued for were and what the latter were reasonably worth. This was necessarily so in the absence of proof of a contract and the terms thereof.

The evidence of Mrs Leahy as to the value of the extra services was properly excluded. The rules of court require (Practice Book, 1908, p. 266, § 5) that when error is claimed in the rulings upon evidence, there shall be a finding which states in each instance the question, the objection, the exception, and the answer, if any. There is no such finding in the record. And we have held that the stenographer's transcript of evidence on an appeal for setting aside a verdict or refusing to set aside a nonsuit, although the questions and rulings therein appear, cannot supply the place of such a finding. Furthermore, it appeared that the witness has for more than twenty years resided in Missouri, and it did not appear that she had any knowledge of the value of services in Hartford such as she was asked to appraise, and she had not made clear what the precise extra services were whose value she was called upon to estimate.

The plaintiff has asked for an order directing the clerk to print as a part of the evidence certified the defendants' oral motion for a nonsuit, and makes a part of her motion a document, Exhibit A, which she claims to be the oral motion and the judge's ruling thereon. If, as we have held above, there was no evidence to warrant a verdict, the court was right in setting the verdict aside, regardless of the grounds upon which

the defendants based their motion. The court might properly set the verdict aside upon a different ground than that upon which the motion was based. The granting of the plaintiff's motion would add nothing useful to the plaintiff to the record, and the motion is therefore denied.

There having been no evidence sufficient to warrant a verdict for the plaintiff, the court properly nonsuited her.

There is no error.

In this opinion the other judges concurred.